# Account History Report
## Leisure Village Association

**Gerard Carpenter**                                    00135-9828

| Trans Date | Transaction | Charges | Payments | Balance | Date Billed | Reference | Comments |
|---|---|---|---|---|---|---|---|
| 02/15/2019 | NSF Proc Fee - Mgmt | 50.00 | | 379.82 | | Return Item Fee | 1/4/19 Stop Payment |
| 02/19/2019 | Returned Payment | 329.82 | | 709.64 | | Return Direct Debi | 02/05/19 Stop Payment |
| 02/19/2019 | NSF Proc Fee - Mgmt | 50.00 | | 759.64 | | Return Item Fee | 02/05/19 Stop Payment |
| 03/01/2019 | Monthly Assessment | 256.90 | | 1,016.54 | | Monthly Charges | Recurring Charges: 03/01/2019 |
| 03/01/2019 | Reserve Assessment | 72.92 | | 1,089.46 | | Monthly Charges | Recurring Charges: 03/01/2019 |
| 03/05/2019 | Direct Debit | | -329.82 | 759.64 | | Direct Debit | Direct Debit: 03/05/2019 |
| 3-12-19 | BK legal | 881.00 | | 1,640.64 | | | Lift Stay |

## Account History Report
## Leisure Village Association

**Gerard Carpenter**                                    00135-9828

| Trans Date | Transaction | Charges | Payments | Balance | Date Billed | Reference | Comments |
|---|---|---|---|---|---|---|---|
| 09/05/2017 | Direct Debit | | -325.42 | 0.00 | | Direct Debit | Direct Debit: 09/05/2017 |
| 10/01/2017 | Monthly Assessment | 243.35 | | 243.35 | | Monthly Charges | Recurring Charges: 10/01/2017 |
| 10/01/2017 | Reserve Assessment | 84.10 | | 327.45 | | Monthly Charges | Recurring Charges: 10/01/2017 |
| 10/05/2017 | Direct Debit | | -327.45 | 0.00 | | Direct Debit | Direct Debit: 10/05/2017 |
| 11/01/2017 | Monthly Assessment | 243.35 | | 243.35 | | Monthly Charges | Recurring Charges: 11/01/2017 |
| 11/01/2017 | Reserve Assessment | 84.10 | | 327.45 | | Monthly Charges | Recurring Charges: 11/01/2017 |
| 11/06/2017 | Direct Debit | | -327.45 | 0.00 | | Direct Debit | Direct Debit: 11/06/2017 |
| 12/01/2017 | Monthly Assessment | 243.35 | | 243.35 | | Monthly Charges | Recurring Charges: 12/01/2017 |
| 12/01/2017 | Reserve Assessment | 84.10 | | 327.45 | | Monthly Charges | Recurring Charges: 12/01/2017 |
| 12/05/2017 | Direct Debit | | -327.45 | 0.00 | | Direct Debit | Direct Debit: 12/05/2017 |
| 01/01/2018 | Monthly Assessment | 243.35 | | 243.35 | | Monthly Charges | Recurring Charges: 01/01/2018 |
| 01/01/2018 | Reserve Assessment | 84.10 | | 327.45 | | Monthly Charges | Recurring Charges: 01/01/2018 |
| 01/05/2018 | Direct Debit | | -327.45 | 0.00 | | Direct Debit | Direct Debit: 01/05/2018 |
| 02/01/2018 | Monthly Assessment | 243.35 | | 243.35 | | Monthly Charges | Recurring Charges: 02/01/2018 |
| 02/01/2018 | Reserve Assessment | 84.10 | | 327.45 | | Monthly Charges | Recurring Charges: 02/01/2018 |
| 02/05/2018 | Direct Debit | | -327.45 | 0.00 | | Direct Debit | Direct Debit: 02/05/2018 |
| 03/01/2018 | Monthly Assessment | 243.35 | | 243.35 | | Monthly Charges | Recurring Charges: 03/01/2018 |
| 03/01/2018 | Reserve Assessment | 84.10 | | 327.45 | | Monthly Charges | Recurring Charges: 03/01/2018 |
| 03/05/2018 | Direct Debit | | -327.45 | 0.00 | | Direct Debit | Direct Debit: 03/05/2018 |
| 04/01/2018 | Monthly Assessment | 243.35 | | 243.35 | | Monthly Charges | Recurring Charges: 04/01/2018 |
| 04/01/2018 | Reserve Assessment | 84.10 | | 327.45 | | Monthly Charges | Recurring Charges: 04/01/2018 |
| 04/05/2018 | Direct Debit | | -327.45 | 0.00 | | Direct Debit | Direct Debit: 04/05/2018 |
| 05/01/2018 | Monthly Assessment | 243.35 | | 243.35 | | Monthly Charges | Recurring Charges: 05/01/2018 |
| 05/01/2018 | Reserve Assessment | 84.10 | | 327.45 | | Monthly Charges | Recurring Charges: 05/01/2018 |
| 05/04/2018 | Direct Debit | | -327.45 | 0.00 | | Direct Debit | Direct Debit: 05/04/2018 |
| 06/01/2018 | Monthly Assessment | 243.35 | | 243.35 | | Monthly Charges | Recurring Charges: 06/01/2018 |
| 06/01/2018 | Reserve Assessment | 84.10 | | 327.45 | | Monthly Charges | Recurring Charges: 06/01/2018 |
| 06/05/2018 | Direct Debit | | -327.45 | 0.00 | | Direct Debit | Direct Debit: 06/05/2018 |
| 07/01/2018 | Monthly Assessment | 243.35 | | 243.35 | | Monthly Charges | Recurring Charges: 07/01/2018 |
| 07/01/2018 | Reserve Assessment | 84.10 | | 327.45 | | Monthly Charges | Recurring Charges: 07/01/2018 |
| 07/05/2018 | Direct Debit | | -327.45 | 0.00 | | Direct Debit | Direct Debit: 07/05/2018 |
| 08/01/2018 | Monthly Assessment | 243.35 | | 243.35 | | Monthly Charges | Recurring Charges: 08/01/2018 |
| 08/01/2018 | Reserve Assessment | 84.10 | | 327.45 | | Monthly Charges | Recurring Charges: 08/01/2018 |
| 08/06/2018 | Direct Debit | | -327.45 | 0.00 | | Direct Debit | Direct Debit: 08/06/2018 |
| 09/01/2018 | Monthly Assessment | 243.35 | | 243.35 | | Monthly Charges | Recurring Charges: 09/01/2018 |
| 09/01/2018 | Reserve Assessment | 84.10 | | 327.45 | | Monthly Charges | Recurring Charges: 09/01/2018 |
| 09/05/2018 | Direct Debit | | -327.45 | 0.00 | | Direct Debit | Direct Debit: 09/05/2018 |
| 10/01/2018 | Monthly Assessment | 256.90 | | 256.90 | | Monthly Charges | Recurring Charges: 10/01/2018 |
| 10/01/2018 | Reserve Assessment | 72.92 | | 329.82 | | Monthly Charges | Recurring Charges: 10/01/2018 |
| 10/05/2018 | Direct Debit | | -329.82 | 0.00 | | Direct Debit | Direct Debit: 10/05/2018 |
| 11/01/2018 | Monthly Assessment | 256.90 | | 256.90 | | Monthly Charges | Recurring Charges: 11/01/2018 |
| 11/01/2018 | Reserve Assessment | 72.92 | | 329.82 | | Monthly Charges | Recurring Charges: 11/01/2018 |
| 11/05/2018 | Direct Debit | | -329.82 | 0.00 | | Direct Debit | Direct Debit: 11/05/2018 |
| 12/01/2018 | Monthly Assessment | 256.90 | | 256.90 | | Monthly Charges | Recurring Charges: 12/01/2018 |
| 12/01/2018 | Reserve Assessment | 72.92 | | 329.82 | | Monthly Charges | Recurring Charges: 12/01/2018 |
| 12/05/2018 | Direct Debit | | -329.82 | 0.00 | | Direct Debit | Direct Debit: 12/05/2018 |
| 01/01/2019 | Monthly Assessment | 256.90 | | 256.90 | | Monthly Charges | Recurring Charges: 01/01/2019 |
| 01/01/2019 | Reserve Assessment | 72.92 | | 329.82 | | Monthly Charges | Recurring Charges: 01/01/2019 |
| 01/04/2019 | Direct Debit | | -329.82 | 0.00 | | Direct Debit | Direct Debit: 01/04/2019 |
| 02/01/2019 | Monthly Assessment | 256.90 | | 256.90 | | Monthly Charges | Recurring Charges: 02/01/2019 |
| 02/01/2019 | Reserve Assessment | 72.92 | | 329.82 | | Monthly Charges | Recurring Charges: 02/01/2019 |
| 02/05/2019 | Direct Debit | | -329.82 | 0.00 | | Direct Debit | Direct Debit: 02/05/2019 |
| 02/15/2019 | Returned Payment | 329.82 | | 329.82 | | Return Direct Debi | 1/4/19 Stop Payment |

THIS DOCUMENT HAS
BEEN PREPARED BY, AND
AFTER RECORDATION
SHOULD BE RETURNED TO:                          5565922

Kovitz Shifrin Nesbit
750 W. Lake Cook Road
Suite 350
Buffalo Grove, Illinois 60089
Attn.: David M. Bendoff, Esq.



PREAMBLE TO THE
FIRST
CONSOLIDATED, AMENDED AND RESTATED
DECLARATION OF CONDOMINIUM OWNERSHIP
AND EASEMENTS, RESTRICTIONS AND COVENANTS
FOR

### LEISURE VILLAGE, FOX LAKE, ILLINOIS

WHEREAS, the Declaration of Condominium Ownership and Easements, Restrictions and Covenants (hereafter the "Declaration") for Leisure Village (hereafter the "Association") was recorded on March 27, 1973 as Document No. 1606020 in the Office of the Recorder of Deeds of Lake County, Illinois against the Property legally described in Exhibit "1" attached hereto, and the Property has been submitted to the provisions of the Illinois Condominium Property Act ("Act"); and

WHEREAS, the Declaration has been amended from time to time by the following documents (hereinafter referred to as the "Amendments") recorded with the Recorder of Deeds of Lake County, Illinois:

| Document No. | Recording Date |
|---|---|
| 2612835 | September 17, 1987; |
| 2612836 | September 17, 1987; |
| 2612837 | September 17, 1987; |
| 2612838 | September 17, 1987; |
| 2612839 | September 17, 1987; |
| 2612840 | September 17, 1987; |
| 2612841 | September 17, 1987; |
| 2612842 | September 17, 1987; and |
| 2612843 | September 17, 1987. |

WHEREAS, Section 27(b)(1) of the Illinois Condominium Property Act (the "Act"), 765 ILCS 605/27, provides a procedure for amending the Declaration to correct

C:\NrPortbl\IMManage\DMB\121976_1.DOC

5565922

LV0011

and determined by the Board to be in the best interests of the Association, cable television service for all of the Units of the condominium on a bulk identical service and equal cost per Unit; and to assess and recover the expense as a common expense and, if so determined by the Board, to assess each and every Unit on the same equal cost per Unit;

(xvi) To reasonably accommodate the needs of a handicapped Unit Owner as required by the federal Civil Rights Act of 1968, the Human Rights Act and any applicable local ordinances, in the exercise of its powers with respect to the use of Common Elements or approval of modifications in an individual Unit.

7. LIABILITY. The members of the Board shall not be personally liable to the Owners or others for any mistake of judgement or for any acts or omissions made in good faith on behalf of the Owners. The Owners shall indemnify and hold harmless each of the members of the Board against all contractual liability to others arising out of contracts made by the Board on behalf of the Owners unless any such contract shall have been made in bad faith or contrary to the provisions of this Declaration. It is intended that the liability of any Owner arising out of any contract made by the Board, or out of the aforesaid indemnity in favor of the members of the Board, shall be limited to such proportion of the total liability thereunder as his percentage of interest in the Common Elements bears to the total percentage interest of all the Owners in the Common Elements. Every agreement made by the Board or the managing agent on behalf of the Owners shall provide that they are acting only as agents for the Owners and shall have no personal liability thereunder (except as Owners) and that each Owner's liability thereunder shall be limited to such proportion of the total liability thereunder as his percentage of interest in the Common Elements bears to the total percentage interest of all Owners in the Common Elements.

## ARTICLE VI

### ASSESSMENTS

(a)(i) Each Unit owner shall pay to the Board current monthly expense charges. On or before July 1, 1973 and each year thereafter, the Board shall estimate the total amount necessary to pay the cost of operating expenses which will be required during that fiscal year commencing April 1, and shall on or before July 1, notify each owner in writing as to the amount of such estimate, with reasonable itemization thereof. Each Voting Member shall receive, at least thirty (30) days prior to the adoption thereof by the Board of Managers, a copy of the proposed annual budget together with an indication of which portions are intended for reserves, capital expenditures or repairs or payment of real estate taxes. Each Voting member shall receive notice, in the same manner as is provided in this Declaration and the Act for membership meetings, of any meeting of the Board of Managers concerning the adoption of the proposed

annual budget or any increase, or establishment of an assessment. Said estimated cash requirement shall be assessed to the Owners according to each owners projected monthly average percentage ownership in the Common Elements for that fiscal year, taking into account his percentage ownership in the Common Elements as shown on Exhibit D and all projected amendments thereto as provided for by Article XI hereof. On August 1, of the fiscal year; and the first of each and every month until the adoption of the next budget, each owner jointly and severally shall be obligated to pay to the Board or as it may direct, 1/12 of the assessment made pursuant to this paragraph.

On or before each annual meeting, the Board shall supply to all owners an itemized accounting of the expenses for the preceding fiscal year actually incurred or paid, together with an indication of which portions were for reserves, capital expenditures or repairs or payment of real estate taxes and with a tabulation of the amounts collected pursuant to the budget or assessment, and showing the net excess or deficit of income over expenditures plus reserves. When directed by the Board, any amount accumulated in excess of the amount required for actual expenses shall be credited to each owner according to each Owner's actual average percentage of ownership in the Common Elements for the fiscal year and any shortage shall be added according to each owner's actual average percentage of ownership in the Common Elements for the fiscal year to future assessments as determined by the Board."

(b) (i) Except as provided in subsection (iii) below, if an adopted budget or any separate assessment by the Board would result in the sum of all regular and separate assessments payable in the current fiscal year exceeding one hundred fifteen percent (115%) of the sum of all regular and separate assessments payable during the preceding fiscal year, the Board of Managers, upon written petition by Unit Owners with twenty percent (20%) of the votes of the Association delivered to the Board within fourteen (14) days of the Board action, shall call a meeting of the Unit Owners within thirty (30) days of the date of delivery of the petition to consider the budget or separate assessment. Unless a majority of the total votes of the Unit Owners are cast at the meeting to reject the budget or separate assessment, it is ratified.

(ii) Any Common Expense not set forth in the budget or any increase in assessment over the amount adopted in the budget shall be separately assessed against all Unit Owners.

(iii) Separate assessments for expenditures relating to emergencies or mandated by law may be adopted by the Board of Managers without being subject to Unit Owner approval or the provisions of Item (i) above or Item (iv) below. As used herein, "emergency" means an immediate danger to the structural integrity of the Common Elements or to the life, health, safety or property of the Unit Owners.

(iv) Assessments for additions and alterations to the Common Elements or to Association-owned property not included in the adopted annual budget, shall be separately assessed and are subject to approval of two-thirds of the total votes of all Unit Owners.

(v) The Board of Managers may adopt separate assessments payable over more than one fiscal year. With respect to multi-year assessments not governed by items (iii) and (iv), the entire amount of the multi-year assessment shall be deemed considered and authorized in the first fiscal year in which the assessment is approved.

(c) If the estimated cash requirements prove inadequate for any reason, except for capital expenditures, subject to subparagraph (b) above, the Board may at any time levy a further assessment, which shall be assessed to the Owners, according to each Owner's average percentage ownership in Common Elements. The Board shall serve notice of further assessment on all Owners by a statement in writing giving the amount and reasons therefor, and such further assessment shall become payable with the monthly expense payment which is due more than ten days after the deliver or mailing of such notice of further assessment. All owners shall be obligated to pay the adjusted monthly amount.

(d) The failure or delay of the Board to prepare or serve the annual or adjusted estimate on the Owner shall not constitute a waiver or release in any manner of such Owner's obligation to pay the expenses, as herein provided, whenever the same shall be determined, and in the absence of any annual estimate, the Owner shall continue to pay the monthly expenses at the then existing monthly rate established for the previous period until the monthly expense payment which is due more than ten days after such new annual estimate shall have been mailed or delivered.

(e) The Board shall keep books of account and of the receipts and expenditures affecting the Common Elements, specifying and itemizing the maintenance and repair expenses of the Common Elements and any other expenses incurred. Upon ten days' notice to the Board and payment of a reasonable fee, any owner shall be furnished a statement of his account setting forth the amount of any unpaid assessments or other charges due and owing from such Owner. The records and the vouchers authorizing the payments shall be available for examination by the Owners at convenient hours of week days.

(f) All funds collected hereunder shall be held and expended for the purposes designated herein, and (except for such special assessments as may be levied hereunder against less than all the Owners and for such adjustments as may be required to reflect delinquent or prepaid assessments) shall be deemed to be held for the benefit, use and account of all the Owners in the percentage set forth in Exhibit "D".

(g) If an Owner is in default in the payment of the aforesaid charges or assessments for thirty days, the members of the Board may bring suit for and on behalf of themselves and as representatives of all Owners, to enforce collection thereof or to foreclose the lien therefor as hereinafter provided, or to bring an action to take possession of such Unit Owner's Interest in the Property and shall have the right to maintain for the benefit of all other Unit Owners an action for possession in the manner prescribed by "An Act in Regard to Forcible Entry and Detainer", approved February 16, 1874, as amended; and there shall be added to the amount due the cost of said suit, and other fees and expenses, together with legal interest and reasonable attorney's fees to be fixed by the court. To the extent permitted by any decision or any statute or law or hereafter effective, the amount of any delinquent and unpaid charges or assessments, and interest, costs and fees as above provided shall be and become a lien or charge against the Unit Ownership of the Owner involved when payable and may be foreclosed by an action brought in the name of the Board as in the case of foreclosure of liens against real estate. Said lien shall take effect and be in force when and as provided in the Act; provided, however, that encumbrances owned or held by any bank, insurance company or savings and loan association shall be subject as to priority, after written notices to said encumbrancer of unpaid common expenses, only to the lien of all common expenses on the encumbered Unit Ownership which becomes due and payable subsequent to the date said encumbrancer either takes possession of the Unit, accepts a conveyance of any interest in the Unit Ownership, or has a receiver appointed in a suit to foreclose his lien. Any encumbrancer may from time to time request a written statement from the Board setting forth the unpaid common expenses with respect to the Unit Ownership covered by such encumbrance.

(h) Amendments to this Article VI shall only be effective upon unanimous written consent of the Owners, and their mortgagees. No Owner may waive or otherwise escape liability for the assessments provided for herein by nonuser of the Common Elements or abandonment of his Unit.

### ARTICLE VII

### COVENANTS AND RESTRICTIONS AS TO USE AND OCCUPANCY

The Units and Common Elements shall be occupied and used as follows:

(a) No Unit shall be used for other than as a residence. Each Unit shall be used as a residence for a single family by the Owner and his family or by a person or single family to whom the Owner shall have sold under contract or leased his Unit subject to the provisions in this Declaration and for no other purpose. In the event two or more adjoining Units are used as a residence for a single family, that part of the Common Elements separating the two or more adjoining Units may be altered to afford ingress

LV0035